Case 07-45567-dml13 Doc 56 Filed 08/13/09    Entered 08/13/09 13:39:19    Page 1 of 8





U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 13, 2009**             **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IN RE § | |
| § | CHAPTER 13 |
| DONOVAN WAYNE RIDDLE AND § | |
| KARLA DENISE RIDDLE, § | CASE NO. 07-45567 (DML) |
| § | |
| DEBTORS. § | |

### Memorandum Opinion

Before the court is *Debtor's* [sic] *Modification of Chapter 13 Plan After Confirmation* (the "Second Modification") filed by Donovan and Karla Riddle ("Debtors") on May 20, 2009. The court considered the Second Modification at a hearing on July 16, 2009 (the "Hearing"). At the Hearing the court heard argument from counsel for Debtors and the chapter 13 trustee (the "Trustee") as well as testimony from Donovan Riddle ("Mr. Riddle").

The court exercises core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(2)(A) and (L).

## I. Background

Debtors filed the above-styled case under chapter 13 of the Bankruptcy Code (the "Code") (11 U.S.C. §§ 101 *et seq.*) on December 14, 2007. Debtors submitted the required schedules and their proposed plan on January 3, 2008. Debtors subsequently amended Schedule I on January 14, 2008, and once more on March 4, 2008.[1] On April 23, 2008, the Trustee submitted a proffer to the court stating Debtors' disposable income as $2,315.81 and recommending confirmation of Debtors' plan. Debtors' plan, which provided for monthly payments of $819 for the first 15 months and $2,405 for the final 45 months, was subsequently confirmed by the court. At confirmation it was expected that the plan would provide for 100% payment of unsecured creditors.

On May 20, 2009, Debtors filed a plan modification (the "First Modification"), seeking to modify their payments to $965 for the final 45 months. The First Modification would have resulted in no payment to unsecured creditors. The Trustee objected to the First Modification,[2] claiming the modified plan would not meet the "good faith test under 11 U.S.C. §1329(b)(1) and 11 U.S.C. §1325(a)(3) based on the totality of the circumstances surrounding the Modified Plan, and / or the disposable income test under 11 U.S.C. §1325(b)(1)(B) and §1325(b)(4)." Debtors then filed the Second Modification, again seeking to modify their plan payments to $965 for the final 45 months, again

---

[1] These amendments significantly altered Schedule I by first adding, then increasing Karla Riddle's income.

[2] As far as the court can glean from the record, the First Modification and the Trustee's objection were never disposed of.

returning 0% to unsecured creditors. Debtors subsequently amended their Schedules I and J to reflect a decrease in Mr. Riddle's income.[3] The Trustee objected to the Second Modification (the "Objection") for the same reasons that he objected to the First Modification.[4] Debtors filed a response to the Trustee's objection.

At the Hearing, the Trustee argued that Debtors, through a step-up plan, had paid less during the first 15 months of their plan than they could have given their disposable income. Had Debtors paid their total disposable income during those 15 months, even after modifying the plan to account for Debtors' reduced income, unsecured creditors would have received a substantial dividend. Mr. Riddle testified that the excess disposable income, which had not been contributed to the plan during the first 15 months, was used to pay essential expenses including expenses related to child care and treatment of his daughter's asthma. Mr. Riddle also admitted that Debtors could afford to pay $973 per month rather than the $965 proposed under the Second Modification.

## II. Issue

The issue posed to the court is whether a debtor, who under a step-up plan pays less than full disposable income in the initial months, acts in good faith in proposing a modification to that plan, due to changes in circumstances, that does not provide as great

---

[3] The effect of Mr. Riddle's reduced income (which occurred because of reduced overtime), was to reduce Debtors' actual disposable income to $980 per month, as reflected on Schedule J.

[4] At the Hearing counsel for the Trustee stated that the Trustee was objecting to the proposed modification on the basis of good faith. Counsel for the Trustee did not press the issue of the disposable income test under Code § 1325(b)(1)(B) or Code § 1325(b)(4). Therefore, the court will not address that issue.

a return to the debtor's creditors as they would have received had the debtor paid to the trustee his or her full disposable income during the initial months.[5]

### III. Discussion

**1. Valid Reasons For Modification**

Chapter 13 of the Code allows for post-confirmation modification of a plan in certain circumstances. Section 1329 provides, in relevant part:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to-
>    (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>    (2) extend or reduce the time for such payments…
>
> (b)
>    (1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
>    (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

A debtor may wish to modify a plan for a number of reasons including a decrease in income or unexpected medical bills. *See Green Tree Acceptance v. Hoggle (In re Hoggle)*, 12 F.3d 1008, 1010 (11th Cir. 1994); 4 COLLIER ON BANKRUPTCY ¶ 1329.02 (15th ed. rev. 2007). While some circuits require that a change in the debtor's circumstances be substantial or unanticipated before

---

[5] At the Hearing the court stated that it would consider the Second Modification in light of all of the tests required under Code § 1325. After careful consideration the court concludes the only test, other than that for good faith, that might support denial of the Second Modification is the best interest of the creditors' test under Code § 1325(a)(4). At the Hearing Mr. Riddle testified that Debtors own no non-exempt property; therefore, under a chapter 7 liquidation unsecured creditors would receive nothing and the best interest of creditors test does not require denial of the Second Modification. Furthermore, it is inappropriate for the court to revisit the issue of whether the plan is in the best interest of the creditors, post confirmation, when the facts have not changed as to that issue. *See In re Braune*, 385 B.R. 167, 172 (Bankr. N.D. Tex. 2008). This is the case in the instant matter.

permitting a plan modification, this circuit does not require that a change meet such a test. *Meza v. Truman (In re Meza)*, 467 F.3d 874, 877-878 (5th Cir. 2006).

In their response to the Trustee's objection to the Second Modification, Debtors claim that they seek to modify their plan because their monthly income has decreased due to a decrease in Mr. Riddle's overtime hours and because their medical expenses have increased due to their daughter's asthma. Clearly, the changes in Debtors' circumstances constitute valid reasons to seek a plan modification. Because in this jurisdiction it is not necessary that a change in circumstances be unanticipated or substantial, there is no need for the court to find more than that Debtors have suffered changes in circumstance warranting modification of their plan.

**2. Good Faith**

The Trustee's objection to the Second Modification alleges that the modified plan does not meet the good faith test under section 1329(b)(1) and section 1325(a)(3). Section 1329(b)(1) makes the requirement of section 1325(a)(3) that the plan be proposed in good faith applicable to plan modifications. *In re Davis*, 404 B.R. 183, 189 (Bankr. S.D. Tex. 2009).

The good faith test under section 1325(a)(3) requires the court to consider the "totality of the circumstances" surrounding proposal of a plan (or, here, a modification). *Suggs v. Stanley (In re Stanley)*, 224 Fed. Appx. 343, 346 (5th Cir. 2007). In applying this test the court is to examine all of the facts in order to determine whether the debtor acted in good faith. *Id*. The purpose of the good faith test is "to bar confirmation of a chapter 13 plan where the debtor either does

not intend to effectuate the plan as proposed or where the proposed plan is for a purpose not permitted under title 11." *In re Chaffin*, 816 F.2d 1070, 1074 (5th Cir.1987) (quoting S. Rep. No. 150, 97th Cong., 1st Sess. 18 (1981)).

In the case at bar the court concludes that Debtors proposed the Second Modification in good faith. The reasons for which Debtors have sought modification are valid, no creditor has objected to the modification, substantially all of Debtors' disposable income will be committed to the plan going forward, and the evidence makes it clear Debtors intend to effectuate their plan as amended by the Second Modification.

The court is, of course, troubled, as was the Trustee, by the loss to creditors of the difference between Debtors' disposable income and their plan payments during the first 15 months of their case. While Debtors' explanation for the expenditure of those moneys is reasonable, the decision that the funds should satisfy Debtors' excess expenses rather than be paid against claims of creditors should have been made *before* exhaustion of the funds, not retrospectively. In the present context, the court is left with little choice but to accept Debtors' assurances that payment of their full disposable income to the Trustee was not practicable. Since, as a practical matter, Debtors lack the ability to make up the difference between what was paid and their past disposable income, the only alternative for the court is to force dismissal of Debtors' case, likely followed by a refiling. While this might serve as a suitable quasi-sanction on Debtors (assuming they deserve such), it is hardly a sensible course.

Moreover, the court is itself to some extent at fault. Allowing debtors to confirm plans that defer, through step-up provisions, payment of presently available disposable income amounts to letting the debtors borrow against their future. As the case at bar all too clearly demonstrates, confirmation of such a step-up plan can lead – and can reasonably be expected to lead – to unfortunate results for the debtors, the trustee, the creditors, and the court.

**3. Step-Up Plans**

Step-up plans can serve a purpose. The Fifth Circuit has stated that analysis of a debtor's "projected disposable income," as defined in section 1325(b)(1), should take into account "evidence of present or reasonably certain future events that [will] substantially change the debtor's financial situation." *Nowlin v. Peake (In re Nowlin)*, 2009 U.S. App. LEXIS 15860, *20-21 (5th Cir. July 17, 2009). A step-up plan would be appropriate, for example, if the debtor were promised an automatic pay increase after 6 months or if the debtor proposed to fund his or her plan in part through future sales of assets. However, a step-up plan is inappropriate in cases such as this where the effect is solely to defer the pain of contributing the debtor's entire disposable income to performance of his or her plan.

The court therefore concludes that it will no longer routinely confirm plans like that in the instant case. Absent an evidentiary record demonstrating satisfactorily that the plan will be fully performed or that creditors will certainly be paid as contemplated by Code § 1325(a)(4) and (b), the court is unlikely to

confirm any plan that provides for payments from the inception of the chapter 13 case of less than 90% of the debtor's disposable income.[6]

### III. Conclusion and Disposition

For the foregoing reasons the Second Modification will be approved, but with payments of $973 per month, rather than $965 per month. Because of the unusual circumstances of this case Debtors will be required to submit their pay-stubs and all other relevant financial information describing their current income and expenses to the Trustee on a monthly basis. Should Debtors' income increase by more than 5% or their expenses decrease by more than 5%, the Trustee may propose a modification to increase Debtors' plan payments.

The Trustee is instructed to submit an order reflecting the foregoing.

#### END OF MEMORANDUM OPINION ####

---

[6] In some cases, a step-down plan may be appropriate at the outset. In other cases, subsequent events such as the failure of some creditors to file claims, may make it unnecessary for the debtor to pay as much as initially anticipated. In such a case, when it becomes clear that a lower monthly payment will permit full compliance with the requirements of chapter 13, a modification under Code § 1329 will be appropriate.